**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CUMULUS MEDIA HOLDINGS INC. and CUMULUS MEDIA INC., | ) ) ) |
| Plaintiffs and Counterclaim-Defendants, | ) ) |
| v. | ) ) |
| JPMORGAN CHASE BANK, N.A., as Administrative Agent under the Amended and Restated Credit Agreement among Cumulus Media Inc., Cumulus Media Holdings Inc., as Borrower, Certain Lenders, Royal Bank of Canada, and Macquarie Capital (USA) Inc., as Co-Syndication Agents, and Credit Suisse AG, Cayman Islands Branch, Fifth Third Bank, Goldman Sachs Bank USA and ING Capital LLC, as Co-Documentation Agents dated as of December 23, 2013, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendant. | ) ) |
| –and– | ) ) |
| ACIS CLO 2013-1 LTD. *et al.* | ) ) |
| Defendant-Intervenors and Counterclaim Plaintiffs. | ) ) ) ) |

Electronically Filed

Case No. 16-cv-9591 (KPF)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS CUMULUS MEDIA HOLDINGS INC. AND CUMULUS MEDIA INC.'S MOTION FOR SUMMARY JUDGMENT**

Justin B. Weiner
Lisa W. Bohl
MOLO LAMKEN LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Tel.: (312) 450-6700
Fax: (312) 450-6701
jweiner@mololamken.com
lbohl@mololamken.com

Steven F. Molo
Joel M. Melendez
MOLO LAMKEN LLP
430 Park Avenue
New York, New York 10022
Tel.: (212) 607-8160
Fax: (212) 607-8161
smolo@mololamken.com
jmelendez@mololamken.com

*Attorneys for Plaintiffs and Counterclaim-Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.     The Credit Agreement....................................................................................... 2

       A.     Overview of the Agreement.................................................................... 2

       B.     Amendments to the Credit Agreement ................................................... 4

       C.     Cumulus's Negative Covenants.............................................................. 5

II.    The Proposed Refinancing................................................................................ 6

ARGUMENT...................................................................................................................... 7

I.     Cumulus's Contractual Rights Can Be Determined as a Matter of Law .......... 7

II.    The Credit Agreement Permits Prepayments on Senior Notes in Connection with "Any Refinancing" .................................................................. 8

       A.     Section 8.8(j) Permits Refinancing the Senior Notes with any Debt Permitted by the Credit Agreement ....................................... 8

       B.     The Refinancing Need Not Be a "Permitted Refinancing" ................... 9

              1.     The Plain Terms of the Provisions at Issue Defeat Defendants' Theory.......................................................... 9

              2.     Context Provided by Other Terms of the Credit Agreement Defeat Defendants' Theory ................................12

III.   The Credit Agreement Permits Each Component of the Refinancing............. 13

       A.     The Credit Agreement Permits the Leverage Ratio Amendment..........13

       B.     The Credit Agreement Permits the Pricing and Maturity Amendments...............14

       C.     The Credit Agreement Permits the Incremental Facility Amendment ..................14

       D.     Section 8.16 Does Not Prohibit the Amendments ..................................15

              1.     Section 8.16 Does Not Apply to Amendments to the Credit Agreement.................................................15

              2.     The Specific Amendment Provisions Trump Section 8.16......................17

3.      The Term Lenders' Interpretation of Section 8.16 Would Render
                Key Credit Agreement Provisions Meaningless ...................................... 19

IV.    The Proposed Refinancing Does Not Violate Any Other Provision................................ 20

       A.     The Proposed Refinancing Does Not Violate the Most-Favored Nation
              Provision ...................................................................................................... 20

       B.     The Implied Covenant of Good Faith and Fair Dealing Does Not Apply ............ 21

V.     The Proposed Refinancing Is Not an Event of Default..................................................... 22

VI.    Cumulus Is Entitled to Specific Performance by JPMorgan ........................................... 22

CONCLUSION........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alt. Thinking Sys., Inc. v. Simon & Schuster, Inc.*,
  853 F. Supp. 791 (S.D.N.Y. 1994)......................................................................8

*Athar v. Hudson Serv. Mgmt., Inc.*, 48 A.D.3d 721 (2d Dep't 2008) ...........................23

*Bank of New York Mellon Trust, Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*,
  821 F.3d 297 (2d Cir. 2016)............................................................................11

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  778 F. Supp. 2d 375 (S.D.N.Y. 2011)..............................................................17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................7

*Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169 (2d Cir. 2010)..................8

*Cram v. Pepsico Exec. Income Deferral Comp. Program*,
  No. 08-cv-10627, 2010 WL 4877275 (S.D.N.Y. Aug. 9, 2010)........................16

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)..............................................................................9

*Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992)................................................................19

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) .................21

*Hatalmud v. Spellings*, 506 F.3d 139 (2d Cir. 2007) ....................................................9

*Instinet Inc. v. Ariel (UK) Ltd.*,
  No. 08-cv-7141, 2010 WL 779324 (S.D.N.Y. Mar. 5, 2010)...........................16

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76 (2d Cir. 2002) ................18

*K. Bell & Assocs, Inc. v. Lloyd's Underwriters*, 827 F. Supp. 985 (S.D.N.Y. 1993).....23

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (1993) .......................................................23

*Kuhns Bros. v. Fushi Int'l, Inc.*,
  06-cv-1917, 2007 WL 2071622 (D. Conn. July 16, 2007)................................11

*L & B 57th St., Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88 (2d Cir. 1998).....................18

*La Mirada Prods. Co., Inc. v. Wassall PLC*, 823 F. Supp. 138 (S.D.N.Y. 1993) ..........23

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010)....................................................................................16

*In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014)....................................18

*LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184 (2d Cir. 2013) .........22

*Manhattan Motorcars, Inc. v. Automobili Lamborghini*,
  244 F.R.D. 204 (S.D.N.Y. 2007) ............................................................................22

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504 (S.D.N.Y. 1989) ...........10

*New York ex rel. Spitzer v. St. Francis Hosp.*,
  289 F. Supp. 2d 378 (S.D.N.Y. 2003)......................................................................18

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir. 2001) .........18

*Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152 (2d Cir. 2003) ......................8

*RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310 (2d Cir. 2003)..................................8

*RM 14 FK Corp. v. Bank One Tr. Co., N.A.*, 37 A.D.3d 272 (1st Dep't 2007)..............22

*Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209 (S.D.N.Y. 2004).................11

*Silver v. Rochester Sav. Bank*, 73 A.D.2d 81 (4th Dep't 1980).....................................23

*Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14 Civ. 4251, 2015
  WL 509678 (S.D.N.Y. Feb. 6, 2015)........................................................................21

*Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d. Cir. 1999) ......................................25

*Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*, 839 F. Supp. 2d 680
  (S.D.N.Y. 2012)....................................................................................................11, 16

*In re Trusteeships Created by Tropic CDO I Ltd.*,
  92 F. Supp. 3d 163 (S.D.N.Y. 2015).........................................................................8

*Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*,
  No. 97 Civ. 4914, 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997) ...............................22

*Waxman v. Cliffs Natural Res. Inc.*,
  16 Civ. 1899, 2016 WL 7131545 (S.D.N.Y. Dec. 6, 2016)....................................10

## STATUTES

28 U.S.C. § 2202 ................................................................................................................25

## OTHER AUTHORITIES

23 Williston on Contracts § 63:22 (4th ed. 2016) .........................................................................22

*Refinancing*, Black's Law Dictionary (10th ed. 2014) ...................................................................9

Restatement (Second) of Contracts § 203 (1981) ......................................................11, 18, 19, 24

**INTRODUCTION**

Cumulus asks this Court to declare that it can exercise its clearly defined rights under a heavily negotiated Credit Agreement that provides it with working capital to operate its complex business.[1]   The Credit Agreement provides for a Term Loan which has $1.810 billion outstanding.  Cumulus has other debt in the form of $610 million in Senior Notes.   If more than $200 million of Senior Notes remain unpaid in January 2019, the maturity of the Term Loan "springs" forward by nearly two years.  Although Cumulus has implemented operational changes to lessen its debt load, it needs time for those changes to take effect.  Accordingly, Cumulus negotiated with Senior Noteholders to refinance its Senior Notes, using a Revolving Credit Facility provided by the Credit Agreement.

When the Credit Agreement's Administrative Agent, JPMorgan Chase Bank, N.A., refused to confirm that it would execute documents necessary to effect the refinancing, Cumulus filed this action seeking a declaratory judgment that the Credit Agreement permits the refinancing and seeking specific performance compelling JPMorgan to execute the documents. An ad hoc group of highly sophisticated Term Lenders (the "Term Lenders") then intervened, claiming that the refinancing violates the Credit Agreement.[2]

The Term Lenders ignore the plain language of the Credit Agreement.  They argue that its allowance of "**any** refinancing" of the Senior Notes really means that Cumulus can only undertake **one kind** of refinancing.  The Term Lenders also contend that the refinancing is barred by Section 8.16, which prohibits certain amendments that adversely affect their interests.  But that prohibition applies to amendments of other agreements, **not** the Credit Agreement.

---

[1] The plaintiffs, Cumulus Media Holdings, Inc. and Cumulus Media Inc., are referred to as "Cumulus" throughout this brief.

[2] The Term Lenders that intervened as Defendants in this case claim to hold roughly one-third ($557 million) of the outstanding Term Loans.  Dkt. 37, Counterclaim ¶ 1.

Moreover, the Term Lenders' interpretation is directly at odds with other provisions of the Credit Agreement that set forth specific standards for amendments of the Credit Agreement.

The Term Lenders' position is not surprising – the Credit Agreement provides that the new Revolving Loans will be secured by the same collateral that secures their Term Loans.  But whether or not they now like the terms of agreement, the Term Lenders agreed that Cumulus could draw Revolving Loans and amend the conditions for doing so.  Cumulus likewise agreed to pay fees for the Revolving Credit Facility, even when it is undrawn.  Cumulus merely seeks to have the benefit what it bargained for – and has been paying for – since December 2013.

This Court should enforce the parties' bargain and grant summary judgment for Cumulus.

## BACKGROUND

I. **THE CREDIT AGREEMENT**

A. **Overview of the Agreement**

This dispute centers on the interpretation of the Credit Agreement.  The Credit Agreement includes a Term Loan with approximately $1.810 billion currently outstanding, as well as a Revolving Credit Facility – a line of credit that can be drawn on, repaid, and then drawn on again.  SMF ¶23.[3]  Additionally, Cumulus has $610 million in unsecured Senior Notes, which, though not governed by the Credit Agreement, are impacted by the Credit Agreement.  *Id.* ¶36.

Under the Credit Agreement, both the Term Loan and Revolving Credit Facility are syndicated loans – each is funded by a group of lenders, as opposed to a single lender.  SMF ¶¶20, 30.  The lenders that hold the Term Loan are referred to as the "Term Lenders," and the lenders that hold the Revolving Credit Commitments are referred to as the "Revolving Lenders."

---

[3] Citations to Cumulus's Local Rule 56.1 Statement of Material Facts take the form "SMF ¶_." The parties' admissions and the record evidence cited in the Statement of Material Facts are incorporated herein by reference to the paragraphs of the Statement of Material Facts.

*Id.* ¶¶ 21, 31.  Each group of lenders is represented by the Administrative Agent, JPMorgan Chase Bank, N.A.  *Id.* ¶ 11.  Any lender may assign its loan obligations to another lender.  *Id.* ¶ 45.  The Credit Agreement only requires that Cumulus and JPMorgan consent to the assignment, and JPMorgan's consent is "not to be unreasonably withheld or delayed."  *Id.*

The Credit Agreement restricts Cumulus's ability to draw on the Revolving Credit Facility if it does not meet certain financial metrics.  SMF ¶¶ 56-57.  Section 8.1 of the Credit Agreement provides that, for Cumulus to borrow under the Revolving Credit Facility, its consolidated first lien net indebtedness must be less than specified multiples of its Consolidated Earnings Before Income, Taxes, Depreciation, and Amortization ("EBITDA").  *Id.* ¶¶ 58-59. The current required ratio is 5.00-1.0, meaning that Cumulus's consolidated first lien net indebtedness cannot exceed 5 times its EBITDA for Cumulus to borrow under the Revolving Credit Facility.  *Id.* ¶ 58.  Because Cumulus's outstanding debt exceeds that threshold, it cannot presently draw on the Revolving Credit Facility.  *Id.* ¶ 60.

Under the Credit Agreement, both the Term Loan and the Revolving Credit Facility are secured by the "Collateral" – substantially all of Cumulus's property.  SMF ¶ 14.  However, the Credit Agreement provides that it may be amended to add "Incremental" Term and Revolving Credit Facilities.  *Id.* ¶¶ 16, 28.  Doing so requires the consent of Cumulus and the lenders "that elect[ ] to extend loans . . . under an Incremental Facility."  *Id.* ¶ 53.  Any loan extended under an Incremental Facility is secured by the same Collateral that secures the Term Loan and Revolving Credit Facility.  *Id.* ¶¶ 17, 26.

The Term Loan is scheduled to mature in December 2020.  SMF ¶ 19.  But the Credit Agreement creates a "springing maturity":  If more than $200 million in Senior Notes remain outstanding in January 2019, the outstanding Term Loan becomes due immediately.  *Id.* ¶ 39.

That would place significant financial pressure on Cumulus and impair the ability of its recent operational changes to take effect. *Id.*

**B.      Amendments to the Credit Agreement**

The Credit Agreement contemplates that it may be amended.  Indeed, Section 11.1 is devoted to amendments of the Credit Agreement.  The requirements for amendments vary based on the provision being amended.  Some amendments require the consent of the Revolving Lenders and Term Lenders as a group.  SMF ¶ 71.  Other amendments require consent of only one group or a subset of Lenders.[4]

Section 11.1 expressly addresses amendments to the leverage ratio covenants in Section 8.1:  "Notwithstanding anything to the contrary contained herein, any amendment, modification or waiver of any provision of subsection 8.1 . . . shall require the written consent of the ***Majority Revolving Lenders (and only the Majority Revolving Lenders)*** and each Loan Party party hereto."  SMF ¶ 65 (emphasis added).  It goes on to state:  "For the avoidance of doubt, it is understood and agreed that the Required Lenders may not, and nor shall the consent of the Required Lenders be needed to, amend, modify or waive any provision of subsection 8.1 . . . ." *Id*.   Required Lenders are "Lenders that hold more than 50% of (a) the aggregate then outstanding principal amount of the Term Loans and (b) the Revolving Credit Commitments . . . ." *Id*. ¶ 70.  Thus, on its face, the Credit Agreement makes clear that the ***Term Lenders*** have no say in the amendment of the leverage ratio covenant in Section 8.1.

The Credit Agreement also permits amendments to extend or add Revolving and Term Loans.  These are governed by Sections 4.24 and 4.25, respectively.  In each case, Cumulus is

---

[4] For example, Cumulus may enter amendments that concern only the Revolving Credit Facility with only "the written consent of the Majority Revolving Lenders."  SMF ¶ 65.

4

permitted to enter the amendment so long as the Lenders providing the funds for the added or extended loans or commitments agree.  *See* SMF ¶¶ 53, 76.

C.     **Cumulus's Negative Covenants**

Section 8 of the Credit Agreement also contains a series of negative covenants, each generally framed as a blanket prohibition followed by a series of exceptions.  SMF ¶ 78.  For example, the Credit Agreement mandates that Cumulus may not "[c]reate, incur, assume or suffer to exist any Indebtedness, except" for a list of carve outs, including the Credit Agreement debts, the Senior Notes, and various other debts listed on a Schedule 8.2 to the Credit Agreement.  *See id.* ¶ 79-80.

The negative covenant of Section 8.8 prohibits Cumulus from making "any optional payment or prepayment" on the Senior Notes.  SMF ¶ 81.  However, Cumulus may make prepayments "in connection with any refinancing of the Senior Notes or Permitted Refinancing thereof permitted pursuant to the terms hereof."  *Id.* ¶ 82.  The Credit Agreement defines "hereof" to refer to the entire Agreement, as opposed to a particular section or subsection.  *Id.* ¶ 83.  The Credit Agreement defines Permitted Refinancing to be a "refinancing" that meets certain parameters such as price and maturity.  *Id.* ¶ 85.

Because Cumulus's agreements and actions outside the purview of the Credit Agreement may affect the parties to the Credit Agreement, the Credit Agreement contains negative covenants concerning Cumulus's ability to make "Amendment[s] of Material Documents."  SMF ¶ 35 (Section 8.16 of the Credit Agreement).  Cumulus cannot "[a]mend" its "organizational documents," an "indenture, credit agreement, or other document [that] . . . evidence[s] or govern[s] the terms" of debts outside the Credit Agreement, or documents governing "the Terms of any Preferred Stock," if that amendment would materially and "adversely affect the interests"

of the Lenders under the Credit Agreement.   *Id.*   Significantly, this negative covenant does not apply to the Credit Agreement itself.

## II.   THE PROPOSED REFINANCING

To avoid the springing maturity on the Term Loan, Cumulus agreed with Senior Noteholders to refinance the Senior Notes.   SMF ¶40.   The refinancing replaces up to $610 million in unsecured Senior Notes with up to $305 million in secured debt from the Credit Agreement's Revolving Credit Facility.   *Id*. ¶41.   Currently, the refinancing must be completed on or before March 13, 2017.   If it is not, Cumulus loses the right to unilaterally extend its agreement with Senior Noteholders, and the deal may be lost.

The refinancing requires four steps:[5]

**Step One.**   Current Revolving Lenders will assign their commitments to current Senior Noteholders, making them "New Revolving Lenders" (Section 4.24 of the Credit Agreement permits those assignments).   SMF ¶44.   The assignments become effective once JPMorgan consents to them.   *Id.* ¶45.   If JPMorgan refuses to consent to any Senior Noteholder as a New Revolving Lender, the terms of the refinancing provide that the Senior Noteholder will automatically participate in the refinancing through a Trust, for which a single lender – Cantor Fitzgerald – will be the New Revolving Lender.   *Id*. ¶48.

**Step Two.**   Cumulus and the New Revolving Lenders will amend the Credit Agreement's provisions concerning the Revolving Credit Facility.   SMF ¶72.   The amendments will extend the maturity of the Revolving Credit Facility to 2020, increase the price (*i.e.* interest rate) of revolving debt, and increase the fee that Cumulus must pay if a portion of the Revolving Credit Facility is not borrowed (Section 4.24 permits such amendments).   SMF ¶¶73-76.   Cumulus and

---

[5] Attached to the Weiner Declaration as Exhibit G is a demonstrative exhibit summarizing the steps of the transaction and the applicable contractual language also recited in this brief.

the New Revolving Lenders will also amend the financial covenants in Section 8.1 to permit Cumulus to borrow from the Revolving Credit Facility at its current leverage ratio, and it will eliminate certain financial maintenance covenants pertaining to the leverage ratio (Section 11.1(e) of the Credit Agreement permits such an amendment).  *Id.* ¶¶ 55, 61-62, 65.

**Step Three.**  Cumulus will agree with the New Revolving Lenders to add an Incremental Revolving Facility (Section 4.25 permits adding such an Incremental Facility).  SMF ¶¶ 51, 52. The Incremental Revolving Facility will add up to $105 million in commitments to the revolver which, together with the $200 million existing revolver, is estimated to be sufficient to consummate the Exchange.  *Id.*

**Step Four.**  To complete the refinancing, Cumulus will pay to retire and cancel the participating Senior Notes using the proceeds of the Revolving Credit Facility, SMF ¶ 43 (Section 8.8(j) of the Credit Agreement permits "*any refinancing*" of the Senior Notes permitted by the terms of the Credit Agreement, *id*. ¶¶ 43, 82 (emphasis added)).   Following the refinancing, the New Revolving Lenders will continue to have Revolving Credit Commitments under the Credit Agreement.  *Id.* ¶ 49.  If Cumulus pays down the revolving debt, it can re-borrow from the same Lenders, subject to the conditions imposed by the Credit Agreement.  *Id.* ¶ 23.

## ARGUMENT

## I.   CUMULUS'S CONTRACTUAL RIGHTS CAN BE DETERMINED AS A MATTER OF LAW

Cumulus seeks summary judgment on its declaratory judgment claims that the Credit Agreement permits its proposed refinancing of Senior Notes and on the Term Lenders' mirror-image counterclaims, alleging that the proposed refinancing would breach the Credit Agreement. Summary judgment is appropriate if the submissions taken together show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The facts are undisputed – all parties agree that Cu-

mulus seeks to refinance the Senior Notes by: (1) assigning the Revolving Credit Commitments; (2) amending the leverage covenants and other terms of the Revolving Credit Facility; (3) adding an Incremental Revolving Facility; and (4) drawing on the Revolving and Incremental Revolving Facilities and paying off the Senior Notes. SMF ¶¶ 44, 50-51, 55, 61, 72-77.

The parties dispute only how the Credit Agreement applies to those facts. Those disputes are well-suited to summary judgment. "The meaning of contract provisions is a question of law." *Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) (determining meaning of contract as a matter of law on appeal); *see also Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (affirming summary judgment after finding contract unambiguous). "[I]f a contract is unambiguous on its face, . . . the rights of the parties under the contract may be determined on a motion for summary judgment." *Alt. Thinking Sys., Inc. v. Simon & Schuster, Inc.*, 853 F. Supp. 791, 795 (S.D.N.Y. 1994).[6] Indeed, judgment as a matter of law "can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties." *In re Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 168 (S.D.N.Y. 2015) (deciding contract case on motion for judgment on the pleadings). Whether the refinancing, the assignments, and the amendments are permitted by the Credit Agreement is thus a series of legal questions capable of resolution on this motion.

## II.   THE CREDIT AGREEMENT PERMITS PREPAYMENTS ON SENIOR NOTES IN CONNECTION WITH "ANY REFINANCING"

### A.   Section 8.8(j) Permits Refinancing the Senior Notes with any Debt Permitted by the Credit Agreement

The Credit Agreement permits Cumulus to refinance the Senior Notes. While Section 8.8

---

[6] The parties agree that New York law governs the Credit Agreement because of the Credit Agreement's choice-of-law provision. SMF ¶ 12. New York enforces choice-of-law provisions. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003).

generally prohibits Cumulus from "mak[ing] . . . prepayment[s] on the principal of the Senior Notes," it contains numerous exceptions.  In particular, Section 8.8(j) provides that Cumulus "may make payments in respect of the Senior Notes and any Permitted Refinancing thereof (i) in connection with ***any refinancing*** of the Senior Notes or any Permitted Refinancing thereof permitted pursuant to the terms hereof . . . ."  SMF ¶ 82 (emphasis added).

"[I]f an agreement is complete, clear and unambiguous on its face, [it] must be enforced according to the plain meaning of its terms."  *Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).  *See also Hatalmud v. Spellings*, 506 F.3d 139, 146-47 (2d Cir. 2007) (similar).  Here, "the plain meaning of [the] terms" in Section 8.8(j) permit Cumulus to make early payments on Senior Notes (or previously refinanced Senior Notes) in connection with "***any***" refinancing.  Refinancing is "[a]n exchange of an old debt for a new debt, as by negotiating a different interest rate or term or repaying the existing loan with money acquired from a new loan."  *See Refinancing*, Black's Law Dictionary (10th ed. 2014). That is exactly the transaction that Cumulus proposes:  Cumulus will replace the Senior Notes with debt obligations under the Revolving Credit Facility and Incremental Revolving Facility. *See supra* pp. 6-7.  The Credit Agreement thus permits this prepayment of the Senior Notes.

### B.     The Refinancing Need Not Be a "Permitted Refinancing"

Defendants misapply a defined term – "Permitted Refinancing" – to argue that the refinancing is prohibited.  This argument is defeated by the plain terms of the provisions at issue, as well as by context provided by other terms of the Credit Agreement.

### 1.     *The Plain Terms of the Provisions at Issue Defeat Defendants' Theory*

Defendants claim that the refinancing must comply with the terms of "Permitted Refinancing" – a defined term of the Credit Agreement that requires, among other things, a refinanced debt to have a maturity equal to or later than the original debt.  Dkt. 37, Counterclaim

¶62. They assert that "the only 'refinancing' permitted pursuant to the Credit Agreement is a Permitted Refinancing." *Id*. And they claim that Cumulus's refinancing does not comply with Permitted Refinancing. *Id*.[7]

Defendants are wrong; the Credit Agreement does not restrict Cumulus to refinancing using "Permitted Refinancing." A court "will not . . . shoehorn into [a contract] additional terms" that parties "wish had been included," *Metro. Life Ins. Co. v. RJR Nabisco*, *Inc.*, 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989), particularly where the contract "could easily have been drafted to incorporate expressly the terms that [a party] now urge[s] th[e] court to imply," *Waxman v. Cliffs Natural Res. Inc.*, 16 Civ. 1899, 2016 WL 7131545 at *10 (S.D.N.Y. Dec. 6, 2016). There are ***18 pages*** of negative covenants in Section 8 that restrict Cumulus's ability to incur certain debts and take various other actions. Nowhere in those 18 pages – or for that matter, anywhere else in the document – does the Credit Agreement limit Cumulus's ability to refinance using a defined "Permitted Refinancing." Rather, the Credit Agreement repeatedly uses the general words "any refinancing" or "a refinancing." *See infra* p. 12.

Section 8.8(j)'s "permitted by the terms hereof" clause does not restrict "any refinancing" to "Permitted Refinancing." Rather, it does the opposite and gives "any refinancing" an expansive meaning. That is because the Credit Agreement mandates that "[t]he words 'hereof', 'herein' and 'hereunder' . . . shall refer to this Agreement as a whole and ***not to any particular provision*** of this Agreement . . . unless otherwise specified." *See* SMF ¶83 (defining "hereof" to include all sections and not just one particular section) (emphasis added). Accordingly, Cumulus may prepay the Senior Notes in connection with any replacement of the Senior Notes by another form of debt ("any refinancing") permitted by the Credit Agreement.

---

[7] Although the Credit Agreement does not require it, Cumulus reserves the right to argue that the refinancing complies with Permitted Refinancing.

Section 8.2 lists the indebtedness that Cumulus is permitted to incur.  *Id.* ¶¶ 79-80.  To be sure, "Permitted Refinancing" is one such indebtedness.  *Id.* ¶ 80.  But there are others, including "[i]ndebtedness . . . under this Agreement (including . . . any Incremental Facility) . . . ."  *Id.* Because the Revolving and Incremental Revolving Facilities are permitted by Section 8.2, they are "refinancing . . . permitted pursuant to the terms hereof," and Section 8.8(j) allows their use to refinance the Senior Notes.[8]  *Id.* ¶ 84.

Defendants' interpretation would effectively replace "any refinancing" with "Permitted Refinancing."  The law forbids such verbal transmogrification for two reasons.  *First*, "where contract provisions use different language, courts must assume the parties intended different meanings."  *Bank of New York Mellon Trust, Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 309 (2d Cir. 2016).  That rule applies when a contract uses a term both generically and as a defined term.  In *Sunbelt Rentals, Inc. v. Charter Oak Fire Insurance Co.*, 839 F. Supp. 2d 680, 688-89 (S.D.N.Y. 2012), for example, the court distinguished a contract's use of the generic "equipment" from the defined term "Equipment."  "Since the drafter . . . did not use the defined term in" the provision, "it would be illogical to conclude" that the provision incorporated the defined term.  *Id.*; *see also Kuhns Bros. v. Fushi Int'l, Inc.,* 06-cv-1917, 2007 WL 2071622, at *6 (D. Conn. July 16, 2007) (similar).  *Second*, interpretations that "would render some provisions superfluous" are "very strongly negated."  Restatement (Second) of Contracts § 203 (1981). Limiting Section 8.8(j) to "Permitted Refinancing" would render "any refinancing" superfluous,

---

[8] The Credit Agreement permits the use of revolving facilities for refinancing, because it permits their use for "general corporate purposes."  SMF ¶ 24.  General corporate purposes include at least "advance payments."  *See* Credit Agreement at 36.  "[G]eneral corporate purposes" also include "paying . . . debt" and similar acts.  *See, e.g.*, *Roselink Inv'rs, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 223 (S.D.N.Y. 2004) (securities fraud case interpreting the phrase).

creating a similar "illogical" result.[9]

### 2.   Context Provided by Other Terms of the Credit Agreement Defeat Defendants' Theory

Other provisions confirm that "refinancing" means something different than "Permitted Refinancing."   Section 8.2(e), for example, contemplates an "extension or renewal or **refinancing**" of "existing Indebtedness of the Borrower or any of its Restricted Subsidiaries listed on Schedule 8.2." SMF ¶ 84 (emphasis added).  Section 8.15 also allows Cumulus to make payments "in connection with **any refinancing** of any Subordinated Indebtedness permitted pursuant to the terms hereof." *Id.* (emphasis added).   And Section 4.5(c) eliminates certain notice requirements when Cumulus makes "*a refinancing* of all of the Facilities [the Term Loan and the Revolving Credit Facility]." *Id.*  (emphasis added).  Had the sophisticated parties to this Credit Agreement wished to specify that "any refinancing" must comport with "Permitted Refinancing," they easily have done so.  That they did not demonstrates that the generic term differs from the defined term.

Indeed, the parties knew how to and did restrict certain of Cumulus's rights using defined terms.  For example, Subsection 7.11 prohibits certain of Cumulus's subsidiaries from taking on any debt "except for the liabilities expressly **permitted** to be incurred **in accordance with the definition of '*Broadcast License Subsidiary*.'**"  SMF ¶ 86 (emphasis added).  Similarly, when the parties wished to reference the limitations of a specific subsection of the Credit Agreement, they did so with precision.  For example, Subsection 4.16(e) permits "prepayment[s] . . . in accordance with subsection 4.23," "purchase[s] . . . in accordance with subsection 11.6," and "an

---

[9] Under the Credit Agreement "Permitted Refinancing" is a type of debt, *not* a restriction on the kinds of refinancing available to Cumulus.  That is why the Credit Agreement consistently refers to the "Senior Notes and any Permitted Refinancing thereof" together – they are a single bucket of debt to which the Credit Agreement applies the same rules and restrictions.

Extension that is ***permitted under subsection 4.24***." *Id.* ¶ 87 (emphasis added).  Cumulus also represented that certain "real property . . . is free and clear of any Liens, other than Liens ***permitted by subsection 8.3***." *Id.* (emphasis added); *see also* §§ 5.18, 6.1(h), 6.1(i) (also referencing "Liens permitted by subsection 8.3").  But in Section 8.8(j), the parties did not specify that prepayments had to be "in accordance with the definition of Permitted Refinancing."  Rather, they used broader terms:  "refinancing . . . permitted pursuant to the terms hereof."

### III.    THE CREDIT AGREEMENT PERMITS EACH COMPONENT OF THE REFINANCING

In addition to generally permitting refinancing of the Senior Notes, the Credit Agreement also expressly permits each individual component of this refinancing transaction: the assignments of Revolving Credit Commitments and the amendments to the Revolving Credit Facility.  The first steps in the proposed refinancing are the assignments of Revolving Credit Commitments to the New Revolving Lenders.  Section 11.6(c) authorizes these assignments.  It permits any Revolving Lender to "sell to any Eligible Assignee . . . all or any part of its rights and obligations under this Agreement."  SMF ¶ 45.

The Credit Agreement also permits the amendments needed to effect the refinancing:  (1) a modification of the financial covenant in Section 8.1 to permit Cumulus to borrow at a higher leverage ratio on the closing date of the refinancing and a modification to a related provision requiring maintenance of certain leverage ratios when the revolver is drawn, SMF ¶¶ 65-69; (2) an increase in the pricing, fees, and maturity date of the Revolving Credit Facility, *id.* ¶¶ 72-76; and (3) an amendment to add an Incremental Revolving Facility, *id.* ¶¶ 52-54.

#### A.    The Credit Agreement Permits the Leverage Ratio Amendment

The amendments to Section 8.1 are permitted by Section 11.1.  Section 11.1 generally prohibits modification of the Credit Agreement unless agreed to by the Required Lenders (Lenders holding a majority (by value) of outstanding Term Loans and Revolving Credit Co-

mmitments).  SMF ¶ 63.  But that Section also contains an exception that allows amendments of Section 8.1 without the consent of the Required Lenders:  "Notwithstanding anything to the contrary contained herein, any amendment, modification or waiver of any provision of subsection 8.1 . . . shall require the written consent of the Majority Revolving Lenders (and only the Majority Revolving Lenders) and each Loan Party . . . ."  *Id*. ¶ 65.  The New Revolving Lenders will be the Majority Revolving Lenders upon execution of the assignments, and they provided written consent to the amendments to Section 8.1.  *Id*. ¶ 67.  Section 11.1 requires nothing else.

**B.      The Credit Agreement Permits the Pricing and Maturity Amendments**

Similarly, Section 4.24 permits Cumulus to agree with "Lenders . . . with . . . Revolving Credit Commitments with a like maturity date" to "extend the maturity date of each such . . . Revolving Credit Commitments and otherwise modify the terms of such . . . Revolving Credit Commitments . . . (including by increasing the interest rate or fees payable in respect of such . . . Revolving Credit Commitments)."  SMF ¶ 76.  Again, Cumulus and the New Revolving Lenders agreed to the pricing, fee, and maturity amendments to the Revolving Credit Facility.

**C.      The Credit Agreement Permits the Incremental Facility Amendment**

Finally, Section 4.25 permits Cumulus to agree to the amendment to add the Incremental Revolving Facility.  That section provides:  "[Cumulus] may from time to time amend this [Credit Agreement] in order to provide to the Borrower increased revolving commitments . . . ."  SMF ¶ 52.  This amendment is called the "Incremental Facility Amendment."  *Id.* ¶¶ 54, 72. Section 4.25(b) allows new Additional Lenders – any lender "that elects to extend loans or commitments under an Incremental Facility" – to enter into an Incremental Facility Amendment with the Borrower.  *Id.* ¶ 53.  The "Incremental Facility Amendment" does not require the consent of any parties "other than the Additional Lenders" and Cumulus.  *Id.* ¶ 54.  Because the

14

New Revolving Lenders and Cumulus have agreed to the Incremental Facility Amendment, *id.* ¶ 50, the Credit Agreement permits it.

### D.        Section 8.16 Does Not Prohibit the Amendments

Despite the fact that Sections 4.24, 4.25, and 11.1 specifically authorize each of the amendments, the Term Lenders argue that another provision of the Credit Agreement permits them to block the amendments.   They argue that "Section 8.16 of the Credit Agreement" prohibits Cumulus from amending "the Credit Agreement in a manner that 'adversely affects the interests of the Lenders.'"   Dkt. 37, Counterclaim ¶ 49.   The Term Lenders claim that because the proposed amendments permit a refinancing that results in new secured debt, the amendments "adversely affect[]" their interests and are barred.

That argument is wrong for three reasons.   *First*, Section 8.16 does not apply to amendments to this Credit Agreement – it applies to amendments to documents evidencing other Indebtedness.   *Second*, even if Section 8.16 did apply to this Credit Agreement, the amendment provisions of Sections 4.24, 4.25, and 11.1 expressly override it.   *Third*, even if they did not expressly override Section 8.16, basic principles of contractual interpretation prohibit reading Section 8.16 in a manner that would nullify Sections 4.24, 4.25, and 11.1, as the Term Lenders' interpretation does.

#### 1.        *Section 8.16 Does Not Apply to Amendments to the Credit Agreement*

As an initial matter, Section 8.16 does not even apply to amendments to the Credit Agreement.   Section 8.16 is a restriction on Cumulus's ability to amend *other* agreements that evidence *other* debts.   Section 8.16 applies to "any indenture, credit agreement or other document entered into to evidence or govern the terms of any Indebtedness identified on Schedule 8.2 or permitted to be created, incurred or assumed pursuant to subsection 8.2."  SMF ¶ 35.   It does not reference the defined term "Agreement" – the defined term used to reference

the "Credit Agreement."  Nor does it use the term "Loan Documents," which includes the Credit Agreement.  *Id.* ¶ 64.

Because Section 8.16 makes no reference to the defined term "Agreement" or "Loan Documents," the Term Lenders' attempt to apply it to these amendments (which are all amendments to the Credit Agreement) fails.  "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."  *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (applying New York law).  The Term Lenders seek to do exactly that, by reinterpreting Section 8.16's reference to "agreements" to include the "Agreement."  New York law requires distinguishing the two terms.  *See Cram v. Pepsico Exec. Income Deferral Comp. Program*, No. 08-cv-10627, 2010 WL 4877275, at *8 n.10 (S.D.N.Y. Aug. 9, 2010) (distinguishing between generic "participants" and defined term because "the capitalization of the term alerted the reader of a defined meaning"); *Sunbelt Rentals, Inc.*, 839 F. Supp. 2d at 688-89; *Instinet Inc. v. Ariel (UK) Ltd.*, No. 08-cv-7141, 2010 WL 779324, at *6 (S.D.N.Y. Mar. 5, 2010) (distinguishing undefined term "patents" as outside the scope of defined term "Patent").

The Term Lenders contend that the generic "credit agreements" in Section 8.16 include the Credit Agreement, because Section 8.16 applies to any "credit agreement . . . to evidence or govern the terms of any Indebtedness . . . permitted to be created, incurred or assumed pursuant to subsection 8.2," and the Term Loans and Revolving Loans are Indebtedness listed in Section 8.2.  Thus, because the Credit Agreement governs the terms of Indebtedness listed on Section 8.2, the Term Lenders claim that Section 8.16 applies to amendments to the Credit Agreement.

The Term Lenders are wrong.  An entirely different section of the Credit Agreement applies to amendments to the Credit Agreement.  Section 11.1, titled "Amendments and

Waivers," expressly governs amendments to the Credit Agreement:  "No Loan Document or any terms thereof may be amended . . . except in accordance with the provisions of this subsection." SMF ¶ 63.  **That** section provides the applicable terms for amendments to the Credit Agreement, not Section 8.16.  The parties to the Credit Agreement would not draft an entire section concerning amendments to the Credit Agreement, only to embed a key amendment provision in Cumulus's negative covenants in Section 8.16.  The provisions only make sense together if Section 11.1 is interpreted to cover amendments to the Credit Agreement, and Section 8.16 is interpreted as a covenant not to amend **other** agreements in ways that adversely affect Lenders.

Indeed, if Section 8.16 were intended to override Section 11.1, it would say so.  Other provisions of the Credit Agreement contain such express exceptions to Section 11.1, *see infra* § III.A (reciting instances when Credit Agreement uses phrase "notwithstanding anything to the contrary"), but Section 8.16 does not.  Given that lack of express override, it would make no sense to interpret Section 8.16 to control Section 11.1.

## 2. *The Specific Amendment Provisions Trump Section 8.16*

Even if Section 8.16 actually applied to amendments to the Credit Agreement – and it does not – Sections 4.24 and 11.1 contain the language that would override it.  Section 4.24 permits Cumulus and holders of Revolving Credit Commitments to agree to maturity extensions, price amendments, and fee amendments "[n]otwithstanding anything to the contrary in this Agreement," and Section 11.1 permits amendments to Section 8.1 "[n]otwithstanding anything to the contrary contained herein."  SMF ¶¶ 65, 76.[10]  "[T]he language '[n]otwithstanding anything in this [contract] to the contrary' trumps all other provisions."  *BNP Paribas Mortg. Corp. v.*

---

[10] In addition, Section 11.1(e) characterizes Section 8.1 as having "been added solely for the benefit of the Revolving Credit Facility."  SMF ¶ 65.  It would be incongruous to use the interests of the Term Lenders, who have no interests in the Revolving Credit Facility, to override an amendment to a section that is "solely for the benefit of" that facility.

*Bank of Am., N.A.*, 778 F. Supp. 2d 375, 400 (S.D.N.Y. 2011).  *See also Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 90-91 (2d Cir. 2002) ("'[N]otwithstanding anything herein contained to the contrary' . . . overrides any inconsistent language elsewhere."); *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 125 (2d Cir. 2001) (similar); *L & B 57th St., Inc. v. E.M. Blanchard, Inc.*, 143 F.3d 88, 93 (2d Cir. 1998) (similar).  Because both Sections 4.24 and 11.1 contain such language, they trump any restriction imposed by Section 8.16.

Although Section 4.25 – the incremental amendment provision – does not contain the same "notwithstanding" language found in Sections 4.24 and 11.1, it too overrides any restriction imposed by Section 8.16.  "It is a fundamental rule of contract construction that specific terms and exact terms are given greater weight than general language." *New York ex rel. Spitzer v. St. Francis Hosp.*, 289 F. Supp. 2d 378, 386 (S.D.N.Y. 2003).  "Indeed, even where there is no true conflict between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate."  *Id.*; *see also* Restatement (Second) of Contracts § 203 (similar); *In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 313 (2d Cir. 2014) (similar).

Section 4.25 sets out specific conditions for Incremental Facility Amendments.  It states that "No Incremental Facility Amendment shall require the consent of ***any*** Lenders other than" the lenders providing the funds or commitments for the Incremental Revolving Facility.  SMF ¶ 54 (emphasis added).  In contrast, Section 8.16's restriction on amendments that adversely affect lenders is general; it does not specifically address the terms and conditions for entering Incremental Facility Amendments.  To the extent the two provisions conflict, Section 4.25 controls.  Whatever Section 8.16 means, it cannot prohibit what Section 4.25 expressly permits.

18

### 3.    *The Term Lenders' Interpretation of Section 8.16 Would Render Key Credit Agreement Provisions Meaningless*

Reading Section 8.16 to bar these amendments would render Sections 4.24, 4.25, and 11.1 meaningless – a result prohibited by New York law.  Cumulus's and the Term Lenders' bargain under the Credit Agreement included provisions giving Revolving Lenders the ability to add Incremental Facilities and to amend or even waive leverage covenants so that Cumulus could draw on the Revolving Credit Facility.  While the Term Lenders contend that Cumulus's exercise of these rights is "dilutive" of their collateral positions, that is the deal that they struck. The Credit Agreement has always provided that Revolving Loans would be secured by the same Collateral that secures the Term Loans on a *pari passu* basis.  And those provisions are not some windfall to Cumulus; Cumulus paid for those rights: an upfront fee, a structuring fee to JPMorgan for arranging the Revolving Credit Facility, and a "Commitment Fee" paid when the Revolving Credit Facility remains undrawn.  SMF ¶ 25.

The Term Lenders cannot use Section 8.16 to rewrite the Credit Agreement just because they are now dissatisfied with it.  "Under New York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . .  is not preferred and will be avoided if possible.'"  *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).  "Where an integrated agreement has been negotiated with care and in detail . . . an interpretation is very strongly negated if it would render some provisions superfluous."  Restatement (Second) of Contracts § 203 (1981).  "Thus, when interpreting this contract we must consider the entire contract and choose the interpretation [of the provision at issue] 'which best accords with the sense of the remainder of the contract.'"  *Galli*, 973 F.2d at 149.  Under the Term Lenders' interpretation of Section 8.16, Cumulus could never add an Incremental Facility and never amend the leverage covenants, because each such action necessarily creates more debt with a

security interest in the Collateral.  That would nullify Sections 4.24, 4.25, and 11.1, eliminating rights that Cumulus bargained and paid for.

The Term Lenders' interpretation of 8.16 also robs the terms of Section 8.16 itself of meaning.  Section 8.16 forbids amendments that "adversely affect the interests of ***the Lenders***," *i.e.* the Term Lenders ***and*** the Revolving Lenders.  That provision cannot block the Revolving Lenders from exercising their rights to provide incremental revolving commitments and to amend leverage covenants.  Such amendments ***benefit*** the Revolving Lenders; they do not adversely affect them.

## IV.   THE PROPOSED REFINANCING DOES NOT VIOLATE ANY OTHER PROVISION

### A.   The Proposed Refinancing Does Not Violate the Most-Favored Nation Provision

The Term Lenders also argue that Section 4.25 provides them with "most favored nation" rights for Incremental Term Facilities.  Dkt. 37, Counterclaim ¶¶ 75-79.  If Cumulus adds an Incremental Term Loan with a higher interest rate than the existing Term Loans, Section 4.25 requires Cumulus to amend the existing Term Loans so that the applicable interest rate is within 50 basis points of the Incremental Term Loans.  *Id.*  The Term Lenders assert that the Incremental Revolving Facility that Cumulus is adding is really an Incremental Term Facility, because if the refinancing must be a "Permitted Refinancing," then the refinancing would be subject to Section 8.8's limitation on restricted payments, which prohibit "any optional payment or prepayment on the principal of the Senior Notes or any Permitted Refinancing of the Senior Notes . . . ."  *Id.* ¶ 61.  According to the Term Lenders, this means (i) that the refinancing would not be freely prepayable, which is a requirement of revolving debt under the Credit Agreement; (ii) if the refinancing is not pre-payable, it is, in effect, a Term Loan; and (iii) Section 4.25 would

20

require Cumulus to raise the interest rate on the existing Term Loans to make it within 50 basis points of the interest rate of the Incremental facility, which has a higher interest rate. *Id.*

The Term Lenders argument is premised on the idea that the refinancing must comply with the definition of "Permitted Refinancing." That – as explained above – is wrong. *See supra* § II.B. Section 8.8(j) does not apply to repayments of the Revolving Credit Facility. *See* SMF ¶ 82 (limiting restrictions on prepayments to the "Senior Notes" and "Permitted Refinancing thereof"). The Revolving Credit Facility can be freely paid down. *Id.* 23. So, it is not a Term Loan and the "most favored nation" provision does not apply.[11]

### B.     The Implied Covenant of Good Faith and Fair Dealing Does Not Apply

The Term Lenders assert that the refinancing breaches the implied covenant of good faith and fair dealing. Dkt. 37, Counterclaim ¶¶ 90-97. That claim is duplicative of its contract claim because the two claims are based on the same allegations – that the refinancing violates the Credit Agreement – so the former claim must be dismissed as redundant. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). "Breach of the duty of good faith and fair dealing 'is merely a breach of the underlying contract, and a claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.' " *Spandex House, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14 Civ. 4251, 2015 WL 509678, at *2 (S.D.N.Y. Feb. 6, 2015).

---

[11] But even if the Term Lenders were correct that the refinancing is or must be a "Permitted Refinancing," their argument would fail. Section 8.8(j) permits prepayments of a Permitted Refinancing using other debt that meets the definition of Permitted Refinancing. The refinancing can thus be paid down. There is thus no basis for labelling the refinancing as a "Term Loan."

Moreover, the implied covenant of good faith and fair dealing cannot override the express terms of the Credit Agreement.  "[T]he implied covenant of good faith and fair dealing does not 'imply obligations inconsistent with other terms of the contractual relationship,'"  *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204 (S.D.N.Y. 2007), nor can it "create duties that negate explicit rights under a contract," *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013).  *See also, e.g.*, 23 Williston on Contracts § 63:22 (4th ed. 2016) ("As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."); *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, No. 97 Civ. 4914, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (similar).  Each step of the refinancing is expressly permitted by the Credit Agreement.  *See supra* § II.  The Term Lenders cannot use the implied covenant of good faith and fair dealing to take away rights that the Credit Agreement expressly gave to Cumulus.  *Cf. RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 37 A.D.3d 272, 274-75 (1st Dep't 2007) (refusing to adopt interpretation of contract at odds with unambiguous language, because "it is hardly obvious that recognizing in plaintiff a broad and standardless veto power over a refinancing is a more fair (or commercially practical) alternative").

## V.    THE PROPOSED REFINANCING IS NOT AN EVENT OF DEFAULT

Finally, the Term Lenders assert that the refinancing breaches the Credit Agreement and thus triggers an Event of Default.  Dkt. 37, Counterclaim ¶ 74.  Because the refinancing does not breach the Credit Agreement, it does not cause an Event of Default.  *See supra* § IV.

## VI.    CUMULUS IS ENTITLED TO SPECIFIC PERFORMANCE BY JPMORGAN

Cumulus also seeks an order finding JPMorgan in breach of the Credit Agreement based on its refusal to sign the consents and amendments, and requiring specific performance.  The

elements of breach of contract are:  "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach."  *K. Bell & Assocs, Inc. v. Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993).  Specific performance is available when the "defendant is able to perform its obligations" and the "plaintiff has no adequate remedy at law."  *La Mirada Prods. Co., Inc. v. Wassall PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993).

The first, second, and fourth elements are not seriously disputed.  The Credit Agreement is a valid contract (SMF ¶¶ 8-11), Cumulus has performed its obligations (*id.* ¶¶ 44-49), and "the law will infer at least nominal damages at the moment of breach."  *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).

The parties only dispute whether JPMorgan is breaching the Credit Agreement. JPMorgan's consent to the assignments is "not to be unreasonably withheld or delayed."  SMF ¶ 45.  Consent to an assignment is "unreasonably with[e]ld" if it is based on something other than objective factors.  *See Athar v. Hudson Serv. Mgmt., Inc.*, 48 A.D.3d 721, 722 (2d Dep't 2008) (failure to consent unreasonable when conditioned not on objective factors); *Silver v. Rochester Sav. Bank*, 73 A.D.2d 81, 82-84 (4th Dep't 1980) (holding that "as a matter of law [bank] cannot use the approval clause" when the transaction's "economic status is completely unobjectionable to the bank").  JPMorgan indicates that it is withholding its consent because the Term Lenders, for whom they are acting as an agent, disapprove of the refinancing.  SMF ¶ 92.  That is unreasonable.

JPMorgan has also indicated that it is following "a process . . . in looking at who the proposed assignees are" to evaluate "them and their credit worthiness."  Dkt. 85, 12/22/16 Hr'g Tr. 37:9-13.  To the extent that JPMorgan completes that process and consents to the assignments, this issue will be moot.  However, even if JPMorgan refuses to consent to some

proposed assignments based on an objective assessment of the credit worthiness of some assignees, the refinancing can still proceed.   The terms of the refinancing provide that if JPMorgan rejects an assignment of Revolving Credit Commitments to any Senior Noteholder as a New Revolving Lender, that Senior Noteholder automatically participates in the refinancing through a Trust.  SMF ¶ 47.  Cantor Fitzgerald will serve as the Revolving Lender for the Trust. *Id*. ¶ 48.  JPMorgan has, to date, given no indication that Cantor Fitzgerald – a major financial institution – is an unacceptable Revolving Lender.  *Id*. ¶ 91.

JPMorgan is also breaching the Credit Agreement by refusing to sign the amendments. JPMorgan's signature on these amendments is merely a ministerial requirement; none of Sections 11.1, 4.24, and 4.25 give the Administrative Agent discretion to block amendments agreed to by Cumulus and the applicable Revolving Lenders.[12]  *See supra* § III.D.

JPMorgan argues that it is not breaching the Credit Agreement, because Section 10.4 says that it is "fully justified in failing or refusing to take any action . . . unless it shall first receive such advice or concurrence of the Required Lenders . . . as it deems appropriate or it shall first be indemnified to its satisfaction."   SMF ¶ 92.   But the Credit Agreement expressly provides Cumulus with the right to make assignments and amendments.  *See supra* pp. 13-14.  If Section 10.4 gave JPMorgan an indefinite right to consult, Cumulus's rights under the Credit Agreement would be vitiated.  New York law does not permit such a result – contracts must be read to give effect to all provisions.  *See supra* pp. 11, 19; Restatement (Second) of Contracts § 203 (1981).

---

[12] Section 4.24(c) provides that JPMorgan, as the "Issuing Lender" that may issue letters of credit and as the "Swing Line Lender," the right to consent to extensions of Revolving Credit Commitments, because the maturity dates of those loans were the same as the Revolving Credit Facility.   But that consent also may not be "unreasonably withheld," and the proposed amendments expressly do not modify the maturity of the Swing Line or letters of credit. Because those loans are not affected, any refusal to consent would be *per se* unreasonable.

Moreover, the Court should order specific performance even if JPMorgan has been –until now – "justified" in not signing the assignments and amendments.  If the Court declares that the transaction is proper, it may also order "[f]urther necessary and proper relief based on [the] declaratory judgment."  28 U.S.C. § 2202; *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 298 (2d. Cir. 1999) ("[P]laintiffs who have won a declaratory judgment from the court to enforce that judgment through injunction, damages and other relief.").  If the Court confirms that the Credit Agreement permits the refinancing, JPMorgan will have no basis for not signing on the consents and amendments.

## **CONCLUSION**

The Court should grant Summary Judgment for Cumulus and order Defendant JPMorgan to sign the consents and amendments necessary to effect the refinancing.

Dated:  January 13, 2017
       New York, New York

Respectfully submitted,

Justin B. Weiner (*pro hac vice*)
Lisa W. Bohl (*pro hac vice*)
MOLO LAMKEN LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Tel.: (312) 450-6700
Fax: (312) 450-6701
jweiner@mololamken.com
lbohl@mololamken.com

/s/Steven F. Molo
Steven F. Molo
Joel M. Melendez
MOLO LAMKEN LLP
430 Park Avenue
New York, New York 10022
Tel.: (212) 607-8160
Fax: (212) 607-8161
smolo@mololamken.com
jmelendez@mololamken.com

*Attorneys for Plaintiffs and Counterclaim-Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13th day of January, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/Lisa W. Bohl

Lisa W. Bohl
MOLO LAMKEN LLP
300 N. LaSalle Street
Chicago, Illinois 60654
Tel.: (312) 450-6700
Fax: (312) 450-6701
lbohl@mololamken.com

*Attorney for Plaintiffs and Counterclaim-Defendants*